## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jeffery Battle, | ) | C/A No. 0:11-1044-DCN-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Jeffery Battle ("Battle"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions[1] and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### ADMINISTRATIVE PROCEEDINGS

In February 2007, Battle applied for DIB and SSI, alleging disability beginning September 8, 2006. (Tr. 144.) Battle's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 4, 2009 at which Battle appeared and testified and was represented by E. Mark Ezell, Esquire. After hearing

---

[1] The court notes that Battle's rely brief was untimely filed. However, even if the court were to consider it, it would not change the court's recommendation in this matter.



testimony from a vocational expert, the ALJ issued a decision on December 8, 2009 denying benefits and concluding that Battle was not disabled as defined by the Social Security Act. (Tr. 8-20.)

Battle was born in 1970 and was thirty-six years old at the time of his alleged disability onset date. (Tr. 28.) He has a high-school education and has past relevant work experience as a machine operator in textile mills, a saw operator and "beam hand" in a lumber mill, an industrial cleaner and machine operator in a fish factory, and an oil lube technician. (Tr. 28-33, 145.) Battle alleges disability since September 8, 2006 due to gunshot wounds resulting in post-traumatic stress disorder ("PTSD"), drop feet, and nerve damage in his legs. (Tr. 144)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since September 8, 2006, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: left foot drop secondary to gunshot wound with injury to peroneal nerve; fracture of the right femur, status post open reduction and internal fixation; fracture of the right humerus; borderline intellectual functioning; attention deficit hyperactivity disorder; and post traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).
                                                    *   *   *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
                                                    *   *   *
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: lift/carry 10 pounds occasionally and items of negligent weight frequently; stand/walk 2 hours; sit 6 hours; occasionally perform pushing/pulling with the right upper extremity; no pushing/pulling with the left lower extremity; occasional balancing, stooping, kneeling, crouch,

*PJG*

crawling, and climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; requires the use of an L-shaped brace on the left foot; avoid concentrated exposure to extreme cold; avoid all exposure to unprotected heights and dangerous machinery; and avoid moderate exposure to uneven surfaces. The claimant would have the following mental limitations: he would be able to follow short, simple instructions; only simple work related decisions with few work place changes; occasional and casual interaction with the public; casual interaction with co-workers; non-confrontational interaction with supervisors; able to sustain concentration and attention for two-hour periods with customary breaks; and workplace changes should be introduced slowly.

\* \* \*

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on [REDACTED], 1970 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 8, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 10-20.) On February 25, 2011, the Appeals Council denied Battle's request for review, making

the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform his past relevant work; and

(5)    whether the claimant's impairments prevent him from doing any other kind of work.

See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age,

PJG

education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Battle raises the following issues for this judicial review:

I.      The ALJ failed to properly assess the treating physician[s'] opinions as required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

II.     The ALJ failed to consider all of the Plaintiff's impairments in making the RFC assessment.

(Pl.'s Br., ECF No. 17 at 23, 35.)

## DISCUSSION

### A.      Opinion Evidence

First, Battle contends that the ALJ erred in disregarding the opinions of two examining physicians about his limitations and ability to work.  Regardless of the source, the Commissioner will evaluate every medical opinion received.  20 C.F.R. § 404.1527.  In evaluating medical opinions,  more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners.  Id.  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  In the face of "persuasive contrary evidence," the ALJ

PJG

has the discretion to accord less than controlling weight to such an opinion. <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " <u>Id.</u> (quoting <u>Craig</u>, 76 F.3d at 590).

### 1. Dr. Glen King

Battle argues that the ALJ erred in giving "no weight" to the opinion of Dr. King, an examining psychologist, regarding Battle's ability to work. Dr. King performed a psychological evaluation on February 1, 2007, and opined that Battle "is going to have significant difficulties functioning in a competitive work place at the present time due to the presence of his PTSD and his tremors. Ordinarily, he has done general labor types of work in the past and will not be able to do that at the present time. . . . I think he is unable to work at the present time and for some time into the future." (Tr. 183.) The ALJ's decision credited "the opinion that the claimant has significant problems functioning in a work environment due to his mental impairments. However, the examiner's opinion regarding his ability to work rested on a combination of his physical and mental impairments as well as on his ability to perform his past work (which was almost exclusively at the medium exertional level). Because this opinion melds a psychological, physical and vocational analysis without a deconstruction that permits an identification of the psychological strands, I give it no weight." (Tr. 18.)

Battle argues that the ALJ's rationale for dismissing the opinion is not supported by the evidence because "PTSD and the tremors that are a result from PTSD are specifically psychological disorders, and therefore, Dr. King was qualified to speak to the effects they would have on Battle's ability to work." (ECF No. 17 at 26.) The Commissioner responds that the ALJ reasonably

discredited the portion of the opinion as to Battle's ability to work because he was only an examining medical source and his opinion was inconsistent with the opinion of Dr. Aileen McAlister, a consulting psychiatrist for the state. As the ALJ discussed in his decision, Dr. McAlister concluded that Battle was "capable of understanding, remembering, and carrying out simple instructions over an 8-hour work day with routine breaks" and that "changes in the work place [should be] introduced slowly due to ADHD, PTSD, BIF and Disorder of reading and written expression." (Tr. 18, 214.)

Upon review of the pleadings, the medical evidence, and the ALJ's decision, the court finds that Battle has failed to demonstrate that the ALJ improperly applied 20 CFR § 404.1527 or SSR 96-2p in evaluating Dr. King's opinion. In determining the weight to be given to the opinion, the ALJ was entitled to consider that Battle only saw Dr. King once. See 20 C.F.R. § 404.1527(d)(2)(I), (ii) (permitting an ALJ to consider the length, nature, and extent of the treatment relationship in evaluating a medical opinion). Second, the ALJ was entitled to consider the extent that Dr. King's opinion conflicted with other medical evidence, such as the opinion of Dr. McAlister. See SSR 96–6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); Smith v. Schweiker, 795 F.2d 343, 345–46 (4th Cir.1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner). Finally, the ALJ stated that he did, in fact, credit Dr. King's opinion "that the claimant has significant problems functioning in a work environment." (Tr. 17.) Notably, the ALJ also observed that in forming his opinion about Battle's limitations and ability to work, Dr. King was proceeding on assumptions about Battle's past work, which was "almost exclusively at the medium exertional level." (Tr. 17.) Consequently, the ALJ tailored the residual functional capacity

PJG

determination to sedentary work with specific limitations for concentration, gradual change, customary breaks, and limited social interaction. Therefore, the ALJ addressed the psychological limitations of PTSD that Dr. King observed in his examination to the extent it was consistent with Dr. McAlister's opinion, and Battle has failed to show that the ALJ's decision was not supported by substantial evidence or resulted from an error of law.

### 2. Dr. Glenton Davis

Battle contends that the ALJ erred in finding the opinion of treating physician Dr. Glenton Davis "not credible" because the finding was based on a flawed analysis. He also asserts the ALJ had a duty under the regulations to follow up with Dr. Davis to clarify any misunderstandings about the opinion before dismissing it.

Dr. Davis saw Battle five times from October 2008 through May 2009, and on January 30, 2009, he performed a clinical assessment of pain and a physical capacities evaluation. In the clinical assessment of pain, Dr. Davis stated that Battle would miss more than four days of work per month. (Tr. 229.) In the physical capacities evaluation, Dr. Davis opined that Battle could be expected in a work setting to lift/carry five pounds occasionally and one pound frequently, but that he could only sit for one hour, and stand/walk for one hour during an eight hour workday. (Tr. 226.) The ALJ found that the physical capacities evaluation was internally inconsistent to the extent that a person could not perform the "occasional" to "frequent" lifting/carrying as described in the questionnaire, and also have the sit/stand/walk limitations as described. In particular, he also found the opinion lacking in explanation as to the conclusion that Battle could only sit one hour in an eight-hour day, especially when Battle answered a disability questionnaire stating he could sit "all day," (Tr. 151) and he told another examining physician, Dr. James Colley, that "he has no difficulty sitting." (Tr.

PJG

185.)  Additionally, the ALJ noted Battle testified at his hearing that he could sit for up to 35 minutes at a time, "[t]hus, even if we credited this testimony, it is likely that he could sit for at least 2 hours in an 8-hour workday."  (Tr. 17.)

Battle argues that the ALJ's rationale was flawed because the ALJ made incorrect assumptions of inconsistences when, in fact, there are none.  First, Battle asserts the physical capacities evaluation form specified that Dr. Davis should answer the questions about Battle's limitations "in a work setting," and therefore, there is no inconsistency to the extent that Battle's testimony was that he could sit for longer periods with his leg elevated or extended at home, as opposed to the questionnaire's assumption of a formal upright position at a desk job.  Battle also argues that the terms "occasional" and "frequent" are terms of art defined in the social security regulations, and cites SSR 96-5p stating that "[a]djudicators must not assume that a medical source using such terms . . . is aware of our definitions of these terms."  Battle further argues that the ALJ should have contacted Dr. Davis for clarification if he believed the opinion was contradictory, citing 20 C.F.R. § 404.1512(e)(1), and Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000).  Although that subsection was removed from the regulation effective March 26, 2012,[2] Battle relies on the language of the former regulation, which was in effect at the time of the decision in this matter:

[2] The current language of 20 C.F.R. § 404.1512(e) reads as follows:

Obtaining a consultative examination.  We may ask you to attend one or more consultative examinations at our expense.  See §§ 416.917 through 416.919t for the rules governing the consultative examination process.  Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources.  However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence.  We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

PJG

(e) *Recontacting medical sources.* When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . .

20 C.F.R. § 404.1512(e)(1) (eff. until Mar. 26, 2012). In <u>Newton</u>, the ALJ rejected the opinion of a treating doctor with a long relationship with the claimant based in part on the testimony of a non-examining consultant who identified information gaps in the medical record. The court found that the ALJ erred in that circumstance by failing to re-contact the treating doctor to seek supplemental information because Newton identified additional evidence that may have led to a different decision, and therefore, met her burden to show prejudice warranting reversal.

The situation in this case is different from that in <u>Newton</u> for a few reasons. Here, Battle appears to argue that if the ALJ had sought clarification about the internal inconsistencies, Dr. Davis could have explained the context of his questionnaire to resolve those issues. First, to the extent Battle argues "the terms the ALJ is relying on to find a contradiction are not defined on the form that the physician completed," (ECF No. 17 at 32), the court notes that, to the contrary, the terms "occasional" and "frequently" are defined in question 5 on the physical capacities evaluation that Dr. Davis completed. (Tr. 226.) Second, even assuming that the ALJ had sought clarification from Dr. Davis, Battle has not carried his burden to show prejudice by indicating how such an explanation would have potentially led to a different decision. To the extent Battle places emphasis on the "work setting" distinction to explain the sitting limitations in the opinion, the "work setting" assumption

is not ambiguous, but highlighted in bold and underlined on the physical capacities evaluation form that the ALJ reviewed and took into consideration. Further, the ALJ's credibility determination was not based only on the appearance of internal inconsistencies, but on inconsistencies with the records of examining physician Dr. Colley, as well as conflicts with Battle's own testimony.[3] "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.") (citation omitted); Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that an ALJ may weigh other factors brought to his or her attention that tend to support or contradict a treating physician's opinion) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)). Therefore, the court finds that Battle has failed to demonstrate the ALJ's decision with regard to Dr. Davis's opinion is unsupported by substantial evidence or controlled by an error of law.

**B.     Residual Functional Capacity**

Battle next argues that the ALJ erred in his assessment of Battle's residual functional capacity because he "did not account for the tremors that affected Battle's hands and arms." (ECF No. 17 at 35.) A claimant's residual functional capacity ("RFC") "is the most [a claimant] can still do despite

---

[3] The Commissioner also points to several other inconsistencies between Dr. Davis's opinion and other evidence in the record. However, such post hoc rationalization is generally prohibited. See Golembiewski v. Barnhart, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); Steel v. Barnhart, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

*PJG*

[his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

In his decision, the ALJ found that Battle retained the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: lift/carry 10 pounds occasionally and items of negligent weight frequently; stand/walk 2 hours; six 6 hours; occasionally perform pushing/pulling with the right upper extremity; no pushing/pulling with the left lower extremity; occasional balancing, stooping, kneeling, crouch, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; requires the use of an L-shaped brace on the left foot; avoid concentrated exposure to extreme cold; avoid all exposure to unprotected heights and dangerous machinery; and avoid moderate exposure to uneven surfaces. The claimant would have the following mental limitations; he would be able to follow short, simple instructions; only simple work related decisions with few work place changes; occasional and casual interaction with the public; casual interaction with co-workers; non-confrontational interaction with supervisors; able to sustain concentration and attention for two-hour periods with customary breaks; and workplace changes should be introduced slowly.

(Tr. 11.) Battle contends the ALJ's opinion was conclusory and "does not explain how Battle could perform sedentary work considering the tremors." (ECF No. 17 at 35.) The Commissioner counters that the tremors were not "vocationally relevant" and that the RFC analysis adequately addressed any functional limitations resulting from the tremors. (ECF No. 18 at 17.) In particular, the Commissioner argues that the record did not support a finding that Battle experienced a tremor regularly because at least two other physicians, Dr. Colley and Dr. Peter Kolettis, each examined Battle and failed to note any observation of tremors. (Tr. 175, 184-89.) However, to the extent the Commissioner argues that examining psychologist Dr. King was the *only* doctor to observe Battle's tremors, Battle correctly points to treatment notes of Dr. Davis, showing treatment for tremors on at least three occasions. On the other hand, the record does not support Battle's argument that the



ALJ "failed to discuss or evaluate [his] well documented tremors at all in formulating the residual functional capacity findings." (ECF No. 17 at 35.) The opinion reflects that the ALJ did, in fact, discuss all such evidence, including the treatment notes of Dr. King and Dr. Davis, and Battle's testimony that "[h]e shakes a lot." (Tr. 12, 13,15,16.)

Nevertheless, even acknowledging that the record demonstrates Battle suffers from tremors, the Commissioner argues that Battle failed to prove any functional limitations related to his hands that were not addressed in the ALJ's RFC analysis. The court agrees. In analyzing Battle's RFC, the ALJ gave "significant weight" to the opinion of Dr. Colley, and his decision discussed that Dr. Colley observed Battle had "normal station and coordination," and "[g]rip stregnth was 5+/5." (Tr. 14, 17.) Further, Battle has failed to point to any medical evidence to establish how his tremors would impair his ability to perform sedentary work, which is his burden to show. See 20 C.F.R. §§ 404.1512(a) & (c), 416.912(a) & (c); SSR 96-3p & SSR 96-7p; see also Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001) ("[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments or their symptoms affect his ability to perform basic work activities.") Finally, the RFC determination contains many limitations in addition to the general qualification for general sedentary work, which would appear to address potential concerns related to tremors, including "lift/carry 10 pounds occasionally. . . occasionally perform pushing/pulling with the right upper extremity . . . avoid all exposure to unprotected heights and dangerous machinery; and avoid moderate exposure to uneven surfaces," as well as limitations on interaction with the public and co-workers. (Tr. 11.) Consequently, Battle has failed to show that the ALJ did not properly consider and include Battle's relevant functional limitations in his RFC determination.

PJG

**RECOMMENDATION**

For the foregoing reasons, the court finds that Battle has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 26, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).